Okay, this is the morning docket for Tuesday, July 16th, 2019. The first case on the docket is 516-0273, People v. Ernest Logsdon. May it please the Court. Counsel. I'm Paige Strong and I represent Ernest Logsdon, the respondent in this case. This is a case of an initial commitment trial in a sexually violent person's case. It comes down to one issue, and that essentially is an after-trial issue. But I need to discuss a little bit of the evidence in this case. The State presented two experts who claimed that they believed in their evaluations that Mr. Logsdon was a sexually violent person. The defense presented an expert who agreed that he was sexually violent but had a lot of disputes, different opinions about his qualities, his mental health, his intelligence, what have you. Ultimately, the jury returned a verdict finding that he was sexually violent. So the next step is to determine whether or not he should be committed to a secure facility at Rushville or if he could be maintained in the community. It's not an automatic that a person who has found to be sexually violent is automatically committed. That's not the case. He is entitled to a dispositional hearing to determine whether or not that's the appropriate place for him to be. Whether he is maintained at Rushville or maintained in the community, he's still under the care of DHS, so it really is purely a placement issue. So the statute requires that the court hold a dispositional hearing, and it is our position that that's not what happened in this case. After the verdict was returned, the Attorney General's office asked that he be immediately committed to Rushville. The request was made to adjourn and to allow there to be some additional testing done on Mr. Logsdon. Was it actually a request to adjourn? It was an objection to continuing to immediate hearing. It was an objection. One of the issues being raised is whether it was a true objection. That is the State's argument, is that it wasn't exactly an objection, that it was a statement of requesting to present additional evidence. Either way, it had the same effect. The defense side asked, heck, it was me, I asked to allow for time to get that additional information about his IQ, which was particularly relevant in this case. Until trial occurred, no one realized how relevant that was, because until the actual trial testimony, it was unknown that the State was going to say they never tested his IQ. It was unknown that the State experts would disagree about how important the IQ issue was. Our expert testified that he had a 70 IQ. She was the only one who had tested him, and that played a huge role in how treatment affects him and how his treatment plan should be designed. That's what the commitment issue is about. What about the issue of forfeiture? I mean, what is our, if you were there, there was no post-trial motion? There was a post-trial motion. It had this issue. Absolutely, and it was denied. But it raised this issue. Yes. Well, it raised the issue that the dispositional hearing was not, was inappropriate, that it shouldn't have been handled that way. So maybe we're having an issue of semantics. The dispositional hearing should not have been held at that time. So what do you think? Do you contest this whole concept of forfeiture? Yes. Based upon the language that you used at the hearing? Yes. Yes. I don't believe the issue should be forfeited. I don't believe you're held to that in any event. It was clear what the complaint was. The complaint was, we have a dispute of facts that can be easily satisfied by additional testing. That additional testing was requested and refused. So then the judge says, as he is allowed to do, I have enough information to make this decision. However, in this case, he didn't have that information because he didn't actually have that hearing. He rejected our request to present information that would be suitable at that dispositional hearing. So I think we are talking a little bit about semantics. Was it a proper objection? Did I not say the right words? It was very clear to the court and the attorney general's office that we were asking for the opportunity to present additional information that we would have to obtain because of the dispute that hit a resident trial. Regarding the IQ. Right. Which is a huge issue in this case because of what the court is supposed to consider when determining whether or not to commit him to Rushville or not. But was there anybody who said he shouldn't be committed? I thought even the defense expert said. Committed to the care of DHS. That's not about placement. Whether he's placed at Rushville or placed in the community, he's still in the care of DHS. That's not something we talk about at trial because it's premature. That's what we talk about at a dispositional hearing. And in this particular case, we didn't have the opportunity to obtain additional information to support our position. And frankly, had the state done that further testing, they may have agreed with us. They admitted they didn't do the testing. The second expert, Dr. Proctor, said that it was inappropriate for the first doctor, Dr. Blue Smith, to just assign a random concept. She said he was low average intelligence but acknowledged she did no testing. Dr. Proctor said that's totally inappropriate. You don't just pick a number or pick a range and say that's what he is. You need to do testing. So even the state's experts had a disagreement about what his IQ was. There does not appear to be a disagreement that IQ is a huge factor in treatment. You have to handle things differently with someone who's got a 70 IQ, as our expert testified, versus someone who has a 110 IQ. Completely different process. So if someone has a lower IQ, is there some other facility that that person might go to rather than Rushville? No, there's not another facility. However, outside in the community, there are all kinds of treatment possibilities. As many treatment providers as you can find, those are different approaches. It can be more tailored to his particular needs, which is what every single treatment plan is supposed to be. We didn't get to get into all of that because the judge said, no, we're not going to. I have enough information. We're not going to do anything else. Our position is that that was not an actual dispositional hearing. We cited two cases with very similar facts, Dodge and Fields, where the court said, this is more than a mere formality. You've got to actually give it some guts. And in this case, it just wasn't. That wasn't done here. So what we're asking is that you vacate the commitment order and allow him to have a new dispositional hearing at which all the proper information could be presented. So that's all we're asking for today. If there are any other questions, I don't have anything else. Thank you. Thank you so much. May it please the court, counsel, Rachel Barbat from the Attorney General's Office, on behalf of the people of the state of Illinois. We're talking about two different inquiries under the SVP Act. The SVP Act requires two different things. First, it requires that the trial court hold a dispositional hearing. That was done here. The trial court laid out the options for counsel, asked counsel to argue about what the appropriate disposition should be in this case, and then decided that the appropriate disposition should be to place respondent in institutional care. The question that the issue that now respondent is really raising is the question of whether additional testing was needed, which under the statute, the statute says that the trial court may request additional testing, implying that the trial court has discretion whether or not to order that additional testing. In this case, the trial court found on the record that it had sufficient information, did not need any additional information about the IQ before making that determination. And that makes sense here because, as the respondent's counsel just said, the IQ goes towards what kind of treatment, what the treatment plan is going to look like for a respondent, but not necessarily whether he belongs in institutional care versus conditional release. In your argument, you jumped to the assumption that he had a hearing. You said he had a hearing. I thought that's what this is about, is whether or not he had a hearing. I think that the argument is actually about whether or not he had enough, or whether or not the trial court should have ordered additional testing. That's really the crux of the respondent's argument now. I think, going back to the record, even if we weren't, just automatically, he had a hearing. If we go look at the post-verdict, what happened post-verdict, the trial court first went off the record, reviewed the options with counsel, went back onto the record, said, I'm aware that these are the options. One, we can make this determination now, or I can order additional testing. State what's your position. The state said, we believe we don't need any additional testing. We believe you can make that determination now. Respondent's own expert testified that conditional release would not be appropriate for a respondent, that he should be in an institutional care setting. So we believe you have all that information. Respondent's counsel argued that there needed to be an additional hearing and time to gather more evidence. The trial court explicitly rejected that, said, I find I have sufficient information under the act to make the determination now, and made the determination now. That's the hearing. It's very unlikely to happen. Excuse me. Why did the state go to so much effort to argue forfeiture then, and it's brief? Right. Well, we wanted to preserve that argument because we do believe that the argument has changed over time. In the post-trial motion, it's pretty clear that what respondent is arguing for is that the trial court lacks sufficient information and should have ordered the additional testing, which is reviewed for abuse of discretion. That argument, we agree, is preserved, but it's abuse of discretion review, and here the trial court already had the testimony from respondent's own expert that institutional care treatment would be more appropriate for respondent. The other question of whether a hearing was ever held. So, excuse me. Yes. What you're saying then is if we take it couched as respondent says we're determining it's statute, it's de novo, whereas the additional testing is abuse of discretion. Yes, and the respondent has forfeited the de novo question. But that's what I was just asking. You said there was a hearing. Yes. And you didn't object. Yes. Okay. Maybe I didn't phrase that correctly. You jumped to the issue that there was a hearing. They're saying there wasn't a hearing. That would be a statutory review. Yes. My apologies. Backing up. Okay. At the threshold, we argue that the respondent has forfeited the argument that there was not a hearing. Okay. We believe there was a hearing. Yes. That would go to the second part of plain error, whether a clear and obvious error occurred, and we then argue that there was no clear or obvious error because it held a hearing. This is very unlike what happened in fields where the state represented to the trial court that it didn't need to hold a hearing at all. The trial court accepted that statement and said, I'm not holding the hearing, and then denied the respondent an opportunity to present. The respondent already had and had wanted to present at the dispositional hearing. In that case, the Illinois Supreme Court said the record affirmatively showed that there was no dispositional hearing, and that was the major problem. In this case, there's no representation that the trial court doesn't need to have a hearing. The respondent was not denied the right to present any witnesses he already had for the dispositional hearing. He simply was denied additional testing, which under the statute is reviewed for abuse of discretion. This is also unlike Dodge. In Dodge, the trial court asked the respondent for his position on what should happen next, and then didn't let respondent counsel even answer. So in that case, there was no argument at all about whether further testing was needed or any argument about whether institutional care or conditional release would be appropriate. And so that was the problem in Dodge. Here we have a hearing. We have arguments. We have the trial court denying a request for additional testing, which makes sense. The trial court had all the evidence it needed. It had respondent's own expert testimony that not only was respondent an SVP, but that treatment in the community would be risky at this point, probably on the basis that all the experts reviewed the offense that formed the basis of the allegations, and that was inspired by a movie he watched in sex offender treatment while in the community. So that was clearly his last treatment experience that led him to commit further hands-on sex offenses, which is problematic, which is in part what the respondent's expert relied on in determining that he should be placed in institutional care. Additionally, we don't know how the IQ testing would have affected the determination. Respondent never really makes it clear why that would have changed the outcome, even assuming respondent's own expert did all of the IQ testing, and even she found that treatment in an institutional care facility would be more appropriate. If there are no further questions, we would ask that you affirm the trial court's judgment. Thank you very much. Just very briefly, I want to address a couple of points that she made, because I think I see where they're going now. The first argument is that there was, in fact, a hearing. Our argument is that anything that we called a hearing, a dispositional hearing, was not, in fact, a hearing. That's our fundamental difference here. I don't think it is significant that, as opposed to, I believe it was Dodge, maybe it was Fields, that the judge didn't say on the record, I'm not doing it because I don't have to. I don't think that precludes a finding by you that what he did was not actually a hearing. He doesn't have to announce it up front. I think you can look beyond that and determine whether the substance of what happened during this brief transaction actually amounted to a dispositional hearing, and it didn't. It just didn't. Is there any law that says that a judge can't use what was put out before the jury and rely on that? No, and, in fact, he can. He can absolutely rely on the information that he saw in front of the jury, that was presented to the jury, to make his decision. In this case, though, he refused to allow additional information, that's what made it not a hearing, that would go beyond what was actually testified at trial because the issue at trial wasn't necessarily where he should be committed. Different testimony, different topic, different direction. What about the fact that they all agree he should be institutionalized somehow, committed somehow? I'm sorry. Absolutely committed somehow, absolutely, but being committed to the DHS is not the same as being committed to Rushville. And I want to point out that while Donna Akerson, the defense expert, did say that it would be risky to have him in the community, she also barely even found him to be sexually violent. She struggled with even saying that he qualified under the statute, but even if the court was going to find that, this would be her more, it wasn't a firm opinion, it would be risky to have him in the community. However, the state's experts, whatever their opinion may have been, was based on a lack of information that they agreed they didn't have and disputed with each other about. We don't know necessarily what their conclusions would have been had they done that same testing, had I had the opportunity to cross-examine them about what that means as far as commitment goes. That's what the judge needed to hear, and he knew there was a dispute about that. So why he refused to hear that information and instead saying, I don't need to do anything further, while it's in his discretion, it's not really appropriate here. And I could say, yeah, that's an abuse of discretion issue, but I think it's more fundamental than that. I think that the issue of whether this was a hearing or not a hearing trumps any kind of conversation about what the judge did when he was in it. He didn't really have a hearing. We asked for an opportunity to obtain and present additional information, and he said, no, thank you. That's not a hearing. And even though he didn't announce up front that he wasn't having a hearing, the effect is, he didn't really have a hearing. He didn't know all of the things he needed to know. It's not as if we were silent on this issue. We weren't. It was very clear what we were complaining about the entire time. Another thing that the state argued is that, or stated to you, is that the judge, we went off the record, we went back on the record, and the judge says, do we all agree that there are two options in this case? Yeah, I agree there are two options, committing to TDF or to Rushville or releasing to the community. The next step is not, don't let me talk about it anymore or give you any evidence about that. My agreeing that there are two options is not me acquiescing to you committing him to Rushville without any further conversation. What was I supposed to do, take my toys and go home? I'm in the middle of it. I've said my piece. I've asked for additional opportunity. I've been denied. That's essentially the end of what I can do at that stage. So I don't think that means anything, that I agree there were two options. There are. I still agree there are two options. I don't agree that the judge gave us a hearing to determine which ones there should be. So we'd ask that you would vacate that commitment order and remand it for a new dispo. Thank you very much. Okay, the arguments and comments will be taken under advisement as well as the briefs and other materials on file, and we'll issue a disposition in due course. Thank you.